E-FILED; Baltimore County Circuit Court
Docket: 8/20/2026 7:36 PM; Submission: 8/20/2026 7:36 PM
Envelope: 27906279

**DONALD OSBORN**
c/o Zernhelt Law LLC
100 West Road, Suite 204
Towson, Maryland 21204

*Plaintiff,*

**v.**

**THE BOARD OF LIBRARY TRUSTEES FOR BALTIMORE COUNTY, governing body of the Baltimore County Public Library**
320 York Road
Towson, Maryland 21204

*Defendant.*

**IN THE CIRCUIT COURT FOR BALTIMORE COUNTY**

Civil Case No. C-03-CV-26-003874

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, Donald Osborn, by counsel, files this Complaint against the Board of Library Trustees for Baltimore, and alleges as follows:

## INTRODUCTION

1. This action concerns the removal of Plaintiff Donald Osborn from his position as Digital Equity and Virtual Services Manager for the Baltimore County Public Library system.
2. On May 27, 2026, the Baltimore County Public Library's Chief Public Services Officer, Erin Baker, provided Plaintiff with a letter stating that his employment was terminated immediately for "misrepresentation of work attendance," without identifying any date, time entry, witness, or other operative fact. Salary and benefits stopped before Plaintiff received the hearing he timely requested.
3. Maryland Code, Education Article ("Education") § 23-406(e) permits dismissal of a library employee only upon a written recommendation of the library director, for one of four enumerated causes, and requires written charges and an opportunity to request a Board hearing before removal.

4. Prior to Plaintiff's hearing, the Board adopted procedures prohibiting opening statements, requiring Plaintiff to present his defense before Baltimore County Public Library disclosed its particularized evidence, barring cross-examination, and allowing no rebuttal. On July 21, 2026, after Baker publicly accused Plaintiff of inaccurate time sheets and undisclosed discrepancies, the Board unanimously upheld termination.

**PARTIES**

5. Plaintiff Donald Osborn is an adult resident of Baltimore County, Maryland. Plaintiff was employed by the Baltimore County Public Library as its Digital Equity and Virtual Services Manager beginning February 23, 2026.

6. Defendant Board of Library Trustees for Baltimore County ("Board") is the statutory governing body of the Baltimore County Public Library system ("BCPL"). *See* Education §§ 23-401, 23-403. The Board sets BCPL personnel policies under Education § 23-406(b) and is the final decisionmaker for employee dismissals under Education § 23-406(e). A county public library or its board is a "local government" under Maryland Code, Courts and Judicial Proceedings ("Cts. & Jud. Proc.") § 5-301(d)(10).

7. "BCPL" is used in this Complaint only to describe the library system operated by the Board. BCPL is not, and therefore is not pleaded as, a separate juridical defendant.

**JURISDICTION AND VENUE**

8. This Court has original, concurrent jurisdiction over Plaintiff's claims under 42 U.S.C. § 1983 and the Fourteenth Amendment, and over the related claims under Maryland law. *See* Cts. & Jud. Proc. § 1-501.

9. This Court may declare rights and grant further relief under Cts. & Jud. Proc. §§ 3-406 and 3-409.

10. Venue is proper in Baltimore County as the Board maintains its central office in Baltimore County and the acts and omissions giving rise to the claims occurred in Baltimore County. *See* Cts. & Jud. Proc. §§ 6-201, 6-202(8).

11. Plaintiff caused service of written notice stating the time, place, and cause of his claimed injuries and unliquidated damages by USPS certified mail, return receipt requested, on August 18, 2026, on the Baltimore County Attorney and the Board, in compliance with Cts. & Jud. Proc. § 5-304.

## FACTUAL ALLEGATIONS

### Employment, assigned duties, and protected work

12. BCPL hired Plaintiff effective February 23, 2026, at an annual salary of $110,302 plus employment benefits.

13. As Digital Equity and Virtual Services Manager, Plaintiff coordinated system-wide hardware and software needs, worked to expand access to digital information and services, supervised personnel, and traveled among BCPL branches to inventory equipment and operational needs.

14. Plaintiff's work advanced digital access for print-disabled, elderly, and low-income patrons. Maryland law requires each public library to offer, alone or through partnership, at least one specified service that may include an initiative expanding digital equity and access to free computing and broadband internet. Education § 23-410.

15. Plaintiff alleges that Baker disagreed with the value or scope of his digital-equity programming, attempted to reallocate its resources, and excluded Plaintiff from reporting about his work to the Board. Plaintiff objected to those actions.

16. Plaintiff's assigned work also included reviewing BCPL's digital systems and data practices. Maryland law restricts inspection, use, and disclosure of library records identifying a patron's use of library materials, services, or facilities. Education § 23-108(a).

17. Plaintiff identified vulnerabilities affecting stored personal information and presented them to Baker as part of his work.

18. After that presentation, Baker's treatment of Plaintiff changed materially.

**The May 27 immediate-termination letter**

19. On May 27, 2026, Baker sent Plaintiff a letter stating that BCPL had terminated his employment effective immediately for "misrepresentation of work attendance."

20. The letter did not identify any allegedly false time entry, date, video, access-card record, witness, policy, instruction, or other operative fact. The letter did not state which ground under Education § 23-406(e)(1)—misconduct in office, insubordination, incompetency, or willful neglect of duty—the Board claimed Plaintiff had committed.

21. BCPL immediately stopped payment of Plaintiff's salary and benefits.

22. Prior to May 27, 2026, Plaintiff had received no performance evaluation, written discipline, written attendance charge, or notice that his employment was in jeopardy.

23. On February 24, 2026, BCPL had approved a modified schedule accommodating Plaintiff's childcare obligation and recognizing that his ending time would correspond with his arrival time.

24. Plaintiff's work required travel throughout the library system. Before May 7, 2026, Plaintiff understood that he could complete a workday at a branch where his duties took him.

25. On May 7, 2026, Baker directed Plaintiff to end his workday at BCPL's central office, absent appreciable need, so to structure his availability for his supervisees. No one rescinded Plaintiff's schedule accommodation and no one told Plaintiff before May 27, 2026, that BCPL believed a particular arrival, departure, location, or time entry violated that direction.

**Plaintiff's hearing request and BCPL's positions**

26. On June 8, 2026, Plaintiff timely requested a Board hearing, denied the stated ground, and requested the evidence and particulars necessary to prepare a defense.

27. At the time, the office of library director was vacant. BCPL has asserted that the Board had authorized Baker to co-manage operations, including personnel matters.

28. On information and belief, one or both of the Board's May 19 and May 28 closed-session actions may have concerned Plaintiff. The subsequently published minutes state that the Board authorized the executive team to implement personnel actions and later authorized an action recommended by Human Resources. Those minutes do not identify a written recommendation from a duly appointed library director, written statutory charges, detail as to a time entry at issue or other particulars, or an enumerated ground under Education § 23-406(e)(1).

29. BCPL stated that it had evidence of early departures, witness statements, and documentation of repeated departures after counseling, but repeatedly declined to disclose any further information about the dates, records, witnesses, or other particulars before the hearing.

30. BCPL asserted that Plaintiff was an "introductory" employee who could be separated for performance or conduct and therefore lacked a protected property interest. Plaintiff responded, and maintains, that Education § 23-406(e) applies to "any library employee" and contains no introductory-period exception to its for-cause and procedural limitations. Thus, BCPL cannot restrict a statutory entitlement.

31. On July 7, 2026, for the first time, BCPL stated in writing that Plaintiff's removal would not become final until the Education § 23-406(e) process—including the requested hearing and Board decision—was complete. Plaintiff's compensation, however, was not reinstated. If the dismissal did not become final until July 21, the May 27 cessation of pay functioned as an unpaid suspension for an unspecified period exceeding ten working days, without the written statement and procedures required by Education § 23-406(d).

**The July 14 procedures and July 21 hearing**

32. On July 14, 2026, the Board adopted hearing procedures for Plaintiff's July 21 hearing.

33. The procedures required the employee to present first, prohibited opening and closing statements, limited each side to thirty minutes, barred cross-examination, and allowed the Board to consider information without applying the rules of evidence. Accordingly, Plaintiff had to complete his case before BCPL ever detailed its allegations and received no opportunity to respond after those allegations were finally disclosed.

34. Plaintiff objected that requiring him to complete his presentation before BCPL disclosed its case would deny a meaningful opportunity to answer the charges and evidence.

35. At the public hearing on July 21, 2026, Plaintiff proceeded first pursuant to the Board's procedures. Plaintiff explained his system-wide duties, his approved flexible schedule, his understanding about branch work, the absence of prior discipline, and his inability to address unspecified dates and evidence because BCPL had expressly denied him those particulars.

36. After Plaintiff's allotted presentation ended, Baker presented BCPL's case. She identified security footage of Plaintiff walking from three dates before her May 7 instruction:

- On April 20, 2026, Plaintiff walked by a camera at 3:43 p.m.
- On April 21, 2026, Plaintiff walked by a camera at 1:59 p.m.
- On April 29, 2026, Plaintiff walked by a camera at 4:13 p.m.

Plaintiff's location or activity after the footage on each of these days was uninvestigated or otherwise undisclosed.

37. Baker identified video of Plaintiff walking from three dates after the May 7 instruction:

- On May 11, 2026, Plaintiff walked by a camera at 4:59 p.m.
- On May 12, 2026, Plaintiff walked by a camera at 5:22 p.m.
- On May 13, 2026, Plaintiff walked by a camera at 5:21 p.m.

Again, no subsequent context or detail was provided.

38. The images did not by themselves show that Plaintiff had ended work, entered a false time, disobeyed a particular instruction, or willfully neglected a duty. BCPL did not pair the images with a particular time sheet entry or a complete day-specific arrival, departure, work-location, and work-product record.

39. Baker asserted generally that access-card data showed arrivals closer to 9:00 a.m. but did not identify any particular time-sheet entry or correlate any arrival to a cited departure. The presentation therefore did not establish that Plaintiff failed to work a full day on any identified date.

40. BCPL presented additional assertions from witnesses about Plaintiff's availability, branch visits, and departmental presence that had not been particularized before Plaintiff completed his presentation.

41. Under the Board's procedures, Plaintiff could not cross-examine the witnesses and received no opportunity to answer the newly particularized evidence after BCPL rested. Some of the statements, moreover, were consistent with Plaintiff performing work away from the central office.

42. The Board entered closed session, returned to public session, and unanimously voted to uphold Plaintiff's termination.

43. The Board's publicly posted minutes state that Baker asserted Plaintiff's time sheets did not accurately reflect hours worked and that door-access-card swipes and security footage showed discrepancies between reported and actual work hours.

44. Plaintiff asserts that those public accusations were false, implied dishonesty, accompanied his termination, and injured his professional reputation and ability to obtain comparable employment.

45. The Board did not identify in its public vote or minutes which statutory ground it found or which time entry it found false, and it did not state operative findings connecting the evidence to misconduct in office, insubordination, incompetency, or willful neglect of duty.

**Injury and conditions affecting relief**

46. Plaintiff has lost salary and employment benefits, has sustained reputational and emotional injury, and has incurred other consequential losses to be proved. Plaintiff has made and will continue reasonable efforts to mitigate his economic damages.

47. The Board's July 21, 2026 unanimous vote and the resulting written and public record constitute the final quasi-judicial action underlying these constitutional claims and is also subject to review in a separate administrative-mandamus proceeding.

## CLAIMS FOR RELIEF

### COUNT I

### DEPRIVATION OF A PROPERTY INTEREST WITHOUT PROCEDURAL DUE PROCESS

### 42 U.S.C. § 1983; U.S. Constitution Amendment XIV

48. Plaintiff incorporates herein all allegations elsewhere provided.

49. Education §§ 23-406(d) and (e) impose mandatory limits on unpaid suspension and dismissal. Education § 23-406(e)'s for-cause restriction gave Plaintiff a legitimate claim of entitlement to continued employment unless and until the Board established an enumerated cause through constitutionally adequate procedure. Education § 23-406(d) separately limited unpaid suspension to a specified period not exceeding ten working days and required written reasons and an opportunity to respond and request a hearing. Neither subsection exempts an introductory employee.

50. Before an effective deprivation, due process required notice of the charges, a general explanation of the employer's evidence, and an opportunity for Plaintiff to present his side. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). The notice and explanation had to identify the operative conduct with sufficient detail to permit a meaningful response. *See Linton v. Frederick Cnty. Bd. of Cnty. Comm'rs*, 964 F.2d 1436 (4th Cir. 1992).

51. The Board, acting under color of state law, deprived Plaintiff of a property interest by causing salary and benefits to stop before constitutionally adequate notice and an opportunity to

respond; failing to provide particularized charges and a general explanation of the evidence before Plaintiff had to present his case; and structuring the hearing so that Baker disclosed the operative evidence only after Plaintiff's response time ended, leaving no meaningful opportunity to answer the newly disclosed case.

52. Those actions created a substantial risk of erroneous deprivation. Disclosing the dates, records, witnesses, and asserted policy violations before Plaintiff's presentation, and allowing a meaningful response to BCPL's case, would have imposed minimal administrative burden.

53. The challenged procedures and decision are attributable to the Board itself as policymaker. Education § 23-406(e) makes the Board the final arbiter of dismissal. The Board adopted the July 14 procedures and unanimously entered the July 21 final action.

54. The deprivation caused loss of salary and benefits, consequential economic loss, emotional distress, and other injury. At minimum, Plaintiff is entitled to nominal damages for the denial of due process.

55. WHEREFORE, relief under this Count is sought from the Board as follows:

(a) A declaration that the Board violated the Fourteenth Amendment;

(b) Reinstatement, restoration of employment status and benefits, correction or annotation of personnel records, and other prospective injunctive relief;

(c) Back pay and benefits and, if reinstatement is impracticable, front pay;

(d) Compensatory economic and proven noneconomic damages;

(e) Nominal damages;

(f) Prejudgment and post-judgment interest to the extent permitted by law;

(g) Costs and reasonable attorney's fees under 42 U.S.C. § 1988; and

(h) Further relief the Court deems just.

## COUNT II

## DEPRIVATION OF A PROPERTY INTEREST WITHOUT PROCEDURAL DUE PROCESS

### Maryland Declaration of Rights, Article 24

56. Plaintiff incorporates herein all allegations elsewhere provided.

57. Article 24 of the Maryland Declaration of Rights protects property from governmental deprivation without due process of law. Education §§ 23-406(d) and (e) imposed mandatory restrictions on unpaid suspension and dismissal and created Plaintiff's protected property interest in continued paid employment.

58. The Board deprived Plaintiff of that interest without adequate notice, a meaningful opportunity to respond before the loss of pay and benefits, or a fundamentally fair adjudicatory procedure.

59. The Board is directly liable for its own constitutional actions and vicariously liable for Maryland constitutional torts committed by its employees within the scope of employment. The violations caused Plaintiff's pleaded losses.

60. WHEREFORE, relief under this Count is sought from the Board as follows:

(a) Declaratory and appropriate injunctive relief, including reinstatement and record correction;

(b) Back pay, lost benefits, and other compensatory economic damages;

(c) Proven noneconomic damages;

(d) Nominal damages;

(e) Prejudgment and post-judgment interest to the extent permitted by law;

(f) Costs and further relief allowed by Maryland law.

## COUNT III

## DEPRIVATION OF A LIBERTY INTEREST IN REPUTATION AND OCCUPATION WITHOUT PROCEDURAL DUE PROCESS

### 42 U.S.C. § 1983; U.S. Constitution Amendment XIV

61. Plaintiff incorporates herein all allegations elsewhere provided.

62. In connection with termination, the Board publicly recorded and posted accusations that Plaintiff's time sheets inaccurately reflected his hours, that security or access records contradicted his reported work, or that Plaintiff otherwise misrepresented work attendance—charges that implied intentional dishonesty and foreclose comparable employment opportunities.

63. The accusations were false. The Board's minutes and public hearing disseminated them beyond internal personnel channels.

64. The Board did not provide a meaningful name-clearing opportunity because Plaintiff had to complete his presentation without adequate notice before Baker disclosed the dates and asserted discrepancies, cross-examination was barred, and no rebuttal was allowed after the stigmatizing accusations were particularized.

65. The Board adopted that procedure and made the final public decision as the statutory final policymaker. The denial of a meaningful name-clearing opportunity caused reputational, economic, emotional, and occupational injury.

66. WHEREFORE, relief under this Count is sought from the Board as follows:

(a) A constitutionally adequate public name-clearing hearing;

(b) Correction or annotation of false and stigmatizing records and a declaration that the prior process was inadequate;

(c) Appropriate prospective relief necessary to provide an effective name-clearing remedy;

(d) Compensatory economic, reputational, and proven emotional-distress damages;

(e) Nominal damages;

(f) Prejudgment and post-judgment interest to the extent permitted by law;

(g) Costs and reasonable attorney's fees under 42 U.S.C. § 1988.

**GENERAL DEMAND**

Plaintiff seeks the relief identified in Counts I through III. The total monetary relief sought on all claims exceeds $75,000, exclusive of interest, costs, and attorney's fees. Plaintiff does not seek duplicative recovery for the same injury. Prejudgment and post-judgment interest are sought only to the extent permitted by law.

Respectfully submitted,

________/s/_________________

Matthew Zernhelt
(AIS #1212130334)
Zernhelt Law, LLC
100 West Road, Suite 204
Towson, MD 21204
Ph.: (443) 690-0870
mz@zernheltlaw.com
*Attorney for Plaintiff*

**JURY DEMAND**

Plaintiff demands a jury trial on all claims and issues triable by jury.